## II. PARTIES

1. Plaintiff **Rita E. Chisholm** is a resident of Arlington, VA and a citizen of the United States. At all times relevant to this complaint she was an employee of the District of Columbia Superior Court, employed at the Moultrie Courthouse in the District. The events giving rise to this complaint occurred in the District of Columbia.

2. Defendant **District of Columbia Superior Court** is a division of the Judicial branch of the District of Columbia, a political subdivision of the Untied States of America. **Ann B. Wicks** is the Executive Officer of the Superior Court and is sued in her official capacity. At all times material to this complaint, Defendant DC Superior Courts acted through it's agents, the senior managers at the Budget and Finance Division, who approved, ratified and adopted all acts and omissions against plaintiff.

## III. GENERAL FACT AVERMENTS

1. **Rita E. Chisholm** is an African American woman, age 59, who worked for the DC Courts for approximately 19 years. Throughout her career she has enjoyed good relationships with previous co-workers and supervisors alike, and has a track-record of being considered an asset to the Courts due to her strong work ethic and personal integrity.

2. In 2000, Ms. Chisholm was assigned to the DC Courts Criminal Finance Division, where she eventually encountered Jennifer Galloway, who began work there in 2002.

3. Prior to November, 2004, Ms. Chisholm and Ms. Galloway were friends. They became acquainted as co-workers at the DC Courts Criminal Finance Division and enjoyed an amicable relationship on the job site.

4. Early in their professional encounters, Ms. Chisholm encouraged Ms. Galloway to establish a relationship with her daughter, Shayena Johnson, who has suffered from serious mental disorders since early childhood. Ms. Chisholm was initially she was happy to see Ms. Galloway interact with Shayena because she felt, at the time, that Ms. Galloway was able to help her troubled daughter make good decisions. In particular, she was grateful when Ms. Galloway encouraged Shayena to return home following the completion of Sheyana's rehabilitation in a mental institution in California.

5. Once Shayena did return home, Ms. Galloway remained in contact with Shayena and continued to advise her on her personal affairs.

6. Around November 2004, however, Ms. Chisholm began to sense that Jennifer Galloway's relationship with Shayena was no longer a healthy one. She became aware that Ms. Galloway and Shayena would speak on the phone frequently and without her knowledge. Ms. Chisholm learned that Shayena had claimed to Ms. Galloway that her mother was abusive and that Ms. Galloway had advised Shayena to no longer follow her mother's guidance. Ms. Chisholm felt that Ms. Galloway did not fully appreciate the extent to which Shayena's mental disorders–including bi-polar disorder and schizophrenia–colored her view of the world and even her own family. Ms. Chisholm was dismayed that Ms. Galloway seemed to entertain Shayena's assertions that her mother was not a good parent.

7. Beginning in May, 2004, Ms. Chisholm began experiencing severe pain in her right wrist. The injury was determined to be caused by repetitious physical activity in performing her normal duties as a Clerk.

8. On November 9, 2004, Ms. Chisholm fell on a staircase and injured her right ankle.

9. Ms. Chisholm applied for and received workers compensation for both these injuries

beginning in January, 2005. She reamined on leave until she was terminated from employment on August 5, 2005.

10. On or around November, 2004, Ms. Chisholm applied for advance annual leave due to job related injuries (she required surgery on her wrist for tendinitis). She received initial word from her supervisor, Cyril Erugo, that her request would be approved once it had traveled through the appropriate channels.

11. Sortly thereafter, however, she was notified via telephone by Margarita Durham–a co-worker in the Criminal Finance Division–that her request had been denied by Mr. Erugo.

12. Ms. Chisholm called Mr. Erugo to inquire as to why her request for leave to have surgery had been denied. Mr. Erugo told her he had "too many people in the Division with use-or-loose leave" and that, therefore, "he needed someone there." He also repeatedly told her, "Look, I have a business to run here."

13. Ms. Chisholm, however, required medical attention for her injury. She applied for Workmen's Compensation leave for her job-related injuries, which was granted by the U.S. Department of Labor.

14. Though she stopped coming to the DC Courts for work everyday, Ms. Chisholm testified that was aware of and disapproved of the continued contact that Ms. Galloway maintained with her daughter Shayena.

15. On November 29, 2004, Ms. Galloway took leave from the DC Courts, and escorted Ms. Chisholm's daughter Shayena to the Arlington, VA branch of the Social Security Office to have herself registered as the payee for Shayena's Social Security Disability Insurance in the place of Ms. Chisholm. Ms. Chisholm felt that Ms. Galloway had seriously overstepped all professional and personal boundaries, and as grateful as she once was to Ms. Galloway for

helping Shayena, she was now equally troubled by Galloway's conduct.

16. Ms. Chisholm also became aware that Ms. Galloway had told mutual co-workers that Ms. Chisholm was not a good parent to Shayena.

17. Ms. Chisholm confronted Ms. Galloway about her conduct, and asked Ms. Galloway to stop contact with her daughter and to stop discussing her personal affairs at the office. Unfortunately, Ms. Galloway did not cease contact with Shayena, nor did she stop discussing Ms. Chisholm's personal family affairs around the office.

18. Pursuant to the DC Courts Personnel Handbook's Policy 1100, Rita Chisholm filed a grievance memorandum with her supervisor, Cyril Erugo, regarding the denial of her request for leave and, especially, Galloway's conduct relating to her daughter on January 11, 2005. In that memorandum, she informed Mr. Erugo that her work environment had become "hostile" as a result of his denial of leave for her to recuperate and because of Ms. Galloway's conduct. She also described Ms. Galloway's trip to the Arlington Social Security office with her daughter and indicated her concerns that Ms. Galloway was spreading false, personal information about her and her family to her co-workers and her supervisors. She further indicated that she was concerned that Ms. Galloway had influenced Mr. Erugo's decision to deny her application for advance annual leave by discussing with him some of the personal information Shayena had relayed to Ms. Galloway. She informed Mr. Erugo that, for several months prior, Ms. Galloway had called Shayena "to find out information regarding [Chisholm's] medical situation and [her] personal whereabouts." She described Ms. Galloway's attempts to smudge her professional reputation as "zealous," and expressed her belief that all co-workers "have a responsibility to work and conduct themselves with the utmost respect for themselves and the others they work with." Ms. Chisholm requested that Mr. Erugo investigate the situation and respond to her. He

did neither.

19. On February 8, 2004, Shayena Johnson petitioned a Virginia court to issue her mother a stay-away order. Ms. Chisholm testified that she was initially surprised and did not understand why Shayena had taken such a course of action. She testified that she later learned, however, that Shayena had acted at the suggestion and encouragement of Jennifer Galloway, who told Shayena how to go about getting the court order. Ms. Chisholm's testified that on February 10, 2005, she came home from a physical therapy appointment (related to her Workmen's Compensation injuries) to find Shayena on the phone with Ms. Galloway. She heard Ms. Galloway tell Sheyena that Ms. Galloway was going to have Ms. Chisholm "written up," and that Ms. Chisholm "may not have a job for being out so long" on Workmen's Compensation leave. Frustrated that Ms. Galloway continued to interfere with her professional life and her personal life, Ms. Chisholm instructed Sheyana to hang up the phone immediately and to have no further contact with Galloway.

20. On February 14, 2004, Shayena's allegations against her mother were dismissed by the Virginia court and the case was closed after it was established that Shayena had not been abused and was prone to manufacturing stories about her mother.

21. On February 20, 2005, because her January 11th memorandum had apparently been ignored by her supervisors, Ms. Chisholm went to COPE , Incorporated, the designated Employee and Workplace Assistance Program (EAP) to get assistance dealing with the stress brought on by the conflict with Ms. Galloway. COPE provides a counselor to any employee of the DC Courts who has "personal and/or workplace concerns" and advises that employee on how to manage and/or remedy those concerns.

22. Ms. Chisholm was assigned an EA Specialist, Marta McKinnon, LPC, M.Ed., on

February 21, 2005. She discussed with Ms. McKinnon the hostile work environment that had resulted from Ms. Galloway's conduct. She also expressed to Ms. McKinnon her feeling that her supervisors were unsympathetic to her grievances regarding Ms. Galloway's conduct because of the leave she had taken for her job-related injuries, and that because of this her supervisors were more inclined to show deference in believing the gossip and rumors spread by Ms. Galloway. She told Ms. McKinnon that she was frustrated by Ms. Galloway's insistence on maintaining contact with her daughter, Shayena, and that she wanted a transfer to another division within the DC Courts to distance herself from Jennifer Galloway.

23. Mr. Dana Friend, Deputy Chief Financial Officer confirmed that he had spoken with a representative from COPE, as confirmed in a memorandum by Mr. Anthony Rainey, Chief Financial Officer's memorandum to Anne Wicks dated June 30, 2005.

24. Ms. Chisholm grew further distressed that Mr. Erugo had failed to respond to her grievance complaint as required by the DC Courts Personnel Handbook, so pursuant to the procedures outlined in Policy 1100, she filed a second grievance with Mr. Erugo's supervisor, Dana Friend, on March 11, 2005.

25. In that memorandum Ms. Chisholm requested a detail to another division within the DC Courts. She explained to Mr. Friend how Ms. Galloway's conduct had effected her personally and professionally, and suggested that the best course of action would be a transfer away from Ms. Galloway. She asked that Mr. Friend look into the matter and call or write her at home (since she was still on Workmen's Compensation leave).

26. Subsequent to this Memorandum, in a phone call to Ms. Chisholm, Mr. Friend discussed the conflict between she and Ms. Galloway wherein he offered to look for another placement for Ms. Chisholm. He agreed over the telephone to respond to Ms. Chisholm in

writing, but, like Mr. Erugo, Mr. Friend failed to follow-up on her Policy 1100 grievance.

27. Ms. Chisholm knew that Mr. Friend and Ms. Galloway enjoyed a close personal relationship off the job site, and she believed that this may account for Mr. Friend's failure to act on her grievance complaint. Mr. Friend recruited Ms. Galloway to work at the Courts after having been very favorably impressed by her in his interaction with her at her previous employment.

28. The next direct contact that Ms. Chisholm received from her employer–without having received word on her Policy 1100 grievances from Mr. Friend or Mr. Erugo–was a notice of termination based on the allegations by Ms. Galloway.

29. None of the management officials involved in proposing, investigating or carrying-out the termination conrtacted or attempted tom contact Ms. Chisholm to ask even a single question about the allegations made by Ms. Galloway.

30. On March 29, 2005, Ms. Chisholm was at home and overheard Shayena (who was in her bedroom) on the home telephone line with Ms. Galloway. Ms. Chisholm was angered that Ms. Galloway was still in contact with Sheyana, and she picked up the phone to tell her daughter to end the call. Both Ms. Chisholm and Ms. Galloway admit that a heated conversation between Ms. Chisholm and her daughter ensued, with Ms. Galloway still on the line.

31. Ms. Galloway later accused Ms. Chisholm of having threatened her during this telephone conversation on Sunday, April 3, 2005.

32. On or around April 4, 2005, Ms. Chisholm testified, she collected her daughter from an Arlington courthouse after a civil commitment hearing resulting in her release. Ms. Chisholm escorted her daughter from the courthouse to the Metro subway system with the hope that Sheyana would return home with her. Ms. Chisholm's uncontested testimony is that Shayena

refused to return home, opting instead to take the metro to Ms. Galloway's house, where she had been invited for a sleep-over.

33. Concerned for her daughter's safety and well-being, Ms. Chisholm testified she asked a close family friend, Mitchell Epps, to call Ms. Galloway's house to check on Shayena. Ms. Chisholm testified that Mr. Epps reached Shayena at Ms. Galloway's house and that Shayena told him that Ms. Galloway was going to "have [her] mother fired" and that she was going to make herself the payee on Shayena's Social Security Disability Insurance checks.

34. Mr. Epps heard Ms. Galloway in the background shouting, "Shut up! Don't tell him all our plans!" Before Shayena ended the call with Mr. Epps, she told him that Ms. Galloway had given her a "brown cigarette" that was "some kind of painkiller."

35. On April, 7, 2005, Shayena was admitted to the Virginia Hospital Center in Arlington for further treatment of her mental disorders. While in the hospital, Shayena tested positive for consumption of "tricyclics," the intoxicating agent of marijuana.

36. Shortly thereafter Ms. Chisholm learned an arrest warrant for her had been issued based on a police report filed by Ms. Galloway, she voluntarily turned herself in to the police, and was processed and released. As part of this process, without any such request by Ms. Galloway, the court order releasing Ms. Chisholm included a directive to stay away from Ms. Galloway.

37. A memorandum from Mr. Anthony Rainey, Chief Financial Officer, dated June 30, 2005 confirms that management considered the stay away order as an important justification for terminating Ms. Chisholm.

38. Ms. Chisholm testified that based on her counsel's advice she agreed to a diversion program that included a requirement that she conduct 40 hours of community service. She

testified that her understanding of this program was that if she completed the program and a subsequent probationary period without further incidents the charges against her would be dropped, and that she could petition to have the arrest record expunged. She did not admit guilt during these Court proceedings.

39. None of the managers involved in proposing, authorizing or implementing the decision to terminate Ms. Chisholm verified the status of the court case, investigated whether the allegations had been proven, or discussed the "stay-away" order with Ms. Chisholm or the Magistrate Judge who issued it.

40. Mr. Rainey issued a memorandum to Ms. Chisholm on April 18, 2005, indicating his tentative agreement with Mr. Friend's recommendation that she be terminated. That letter cites a memorandum to Dana Friend as the basis for Ms. Chisholm's termination. In essence, the cited memorandum outlines allegations made by Ms. Galloway against Ms. Chisholm.

41. On August 5, 2005, Ms. Chisholm was removed from service at the Superior Court. Among the reasons stated in the removal letter was the allegations by Ms. Galloway and the criminal matter that resulted, which the Court viewed as a violation of their personnel policy.

42. Subsequent to Ms. Chisholm's removal, Ms. Galloway and at least one other Court employee in Budget and Finance Division was also arrested on criminal charges. Rather than terminating those employees, who, according to knowledge and belief, are under age 45, were transferred, reassigned, or otherwise suffered no, or far less severe, employment action than Ms. Chisholm.

43. On or about September 21, 2006, Ms. Chisholm received an completed Equal Employment Opportunity Commission (EEOC) Form 161, indicating the EEOC had closed her case and informing her of her right to file this claim in Federal District court.

### III. CLAIMS FOR RELIEF

Count 1. Violations of the Age Discrimination in Employment Act

44. Plaintiff realleges paragraphs numbered 1-42 above.

45. The plaintiff was treated in a discriminatory manner in violation of 29 USC 621, et seq., when younger employees in her division who allegedly engaged in activity similar to that which the Courts claimed was the reason for terminating Plaintiff, did not suffer the same adverse personnel actions.

Count 2. Violations of the Rehabilitation Act/Americans With Disabilities Act

46. Plaintiff realleges paragraphs 1-44 above.

47. Ms. Chisholm's managers proposed Ms. Chisholm's termination because of her long absence from work due to the disabling injuries to her wrist and ankle, which resulted in her inability to come to work. At least one of these injuries substantially limited her ability to perform a central duty of her position (operating a computer keyboard) and constitute a substantial limitation of a major life activity.

48. Rather than attempting to accommodate Ms. Chisholm, the Courts terminated her employment in violation of the Act.

### REQUEST FOR RELIEF

Wherefore, Plaintiff requests the following relief be granted for both Counts above:

1. Reinstatement, with full back pay and benefits to her position at the Court;

2. Compensatory damages for injury to the Plaintiff, including but not limited to injury to her professional reputation and standing, mental health and well being,

Physical health and well being, career and income potential;

4. All other relief which law and equity may provide , including the costs, expenses and disbursements necessary to pursue this action and reasonable attorney fees.

## JURY DEMAND

Plaintiff request a trail by jury for all issues so triable.

Respectfully Submitted:

F. Douglas Hartnett
DC Bar 466851
Elitok and Hartnett at Law, L.L.C.
2428 Wisconsin Avenue, NW
Washington, DC 20007
(202) 965-0529 (vox)
(202) 965 0530 (fax)

Counsel for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

RITA CHISHOLM

## DEFENDANTS

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA, ANN B. WICKS, Administrator

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

F. Douglas Hartnett, Elitok & Hartnett, LLC
2428 Wisconsin Ave., N.W., 2nd Floor
Washington, DC 20007

CASE NUMBER 1:06CV02174
JUDGE: Reggie B. Walton
DECK TYPE: Employment Discrimination
DATE STAMP: 12/21/2006

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ● 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ● H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
● 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
~~Title VII of Civil Rights Act of 1964~~, Age Discriminaton. ADA 29 USC 621 and Americans with Disabilities Act

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ $1,000,000.00  Check YES only if demanded in complaint
JURY DEMAND: YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 12/21/06  SIGNATURE OF ATTORNEY OF RECORD [signature]

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.