UNITED STATES FEDERAL DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
:
**RITA CHISHOLM** :
**4221 S. 12th Road** :
**Arlington, VA 2204,** :
       Plaintiff, :
:   **Civil Action No. 06-2174 (RBW)**
       v. :   (Jury Trial Requested)
:
**DISTRICT OF COLUMBIA,** :   Date: October 31, 2007
   a Municipal Corporation :
       Defendants. :
_____:

### AMENDED (2nd) COMPLAINT OF UNLAWFUL EMPLOYMENT DISCRIMINATION AND RETALIATION

### I.  INTRODUCTORY STATEMENT

    Plaintiff Rita Chisholm, by and through undersigned Counsel hereby files this complaint for money damages and other relief for violations of the Rehabilitation Act, the Age Discrimination in Employment Act and for wrongful termination by the Defendant.

    Plaintiff was unlawfully terminated in violation of public policy from her position as an office clerk in the Budget and Finance Division of the District of Columbia Superior Courts while recovering from a disabling injury she received while at work, and for alleged misconduct committed while on leave, when other younger employees with similar alleged misconduct were not terminated.

    Plaintiff seeks reinstatement, back pay, restoration of benefits, compensatory damages, attorney fees, and any other damages available and appropriate.

## II. PARTIES

1. Plaintiff **Rita E. Chisholm** is a resident of Arlington, VA and a citizen of the United States. At all times relevant to this complaint she was an employee of the District of Columbia Superior Court, employed at the Moultrie Courthouse in the District. The events giving rise to this complaint occurred in the District of Columbia.

2. Defendant **District of Columbia,** a municipal corporation, is an entity created and authorized by the United States Congress. The Plaintiff's employer, the District of Columbia Superior Court is a division of the District of Columbia Courts, a political subdivision of the District of Columbia. At all times material to this complaint, Defendant District of Columbia acted through it's agents, the senior managers at the Budget and Finance Division of the Superior Court, who approved, ratified and adopted all acts and omissions against plaintiff.

## III. GENERAL FACT AVERMENTS

1. **Rita E. Chisholm** is an African American woman, age 59, who worked for the DC Courts for approximately 19 years. Throughout her career she has enjoyed good relationships with previous co-workers and supervisors alike, and has a track-record of being considered an asset to the Courts due to her strong work ethic and personal integrity.

2. In 2000, Ms. Chisholm was assigned to the DC Courts Criminal Finance Division, where she eventually encountered Jennifer Galloway, who began work there in 2002.

3. Prior to November, 2004, Ms. Chisholm and Ms. Galloway were friends. They became acquainted as co-workers at the DC Courts Criminal Finance Division and enjoyed an

amicable relationship on the job site.

4. Early in their professional encounters, Ms. Chisholm encouraged Ms. Galloway to establish a relationship with her daughter, Shayena Johnson, who has suffered from serious mental disorders since early childhood. Ms. Chisholm was initially she was happy to see Ms. Galloway interact with Shayena because she felt, at the time, that Ms. Galloway was able to help her troubled daughter make good decisions. In particular, she was grateful when Ms. Galloway encouraged Shayena to return home following the completion of Sheyana's rehabilitation in a mental institution in California.

5. Once Shayena did return home, Ms. Galloway remained in contact with Shayena and continued to advise her on her personal affairs.

6. Around November 2004, however, Ms. Chisholm began to sense that Jennifer Galloway's relationship with Shayena was no longer a healthy one. She became aware that Ms. Galloway and Shayena would speak on the phone frequently and without her knowledge. Ms. Chisholm learned that Shayena had claimed to Ms. Galloway that her mother was abusive and that Ms. Galloway had advised Shayena to no longer follow her mother's guidance. Ms. Chisholm felt that Ms. Galloway did not fully appreciate the extent to which Shayena's mental disorders–including bi-polar disorder and schizophrenia–colored her view of the world and even her own family. Ms. Chisholm was dismayed that Ms. Galloway seemed to entertain Shayena's assertions that her mother was not a good parent.

7. Beginning in May, 2004, Ms. Chisholm began experiencing severe pain in her right wrist. The injury was determined to be caused by repetitious physical activity in performing her normal duties as a Clerk.

8. On November 9, 2004, Ms. Chisholm fell on a staircase and injured her right ankle.

9. Ms. Chisholm applied for and received workers compensation for both these injuries beginning in January, 2005. She remained on leave until she was terminated from employment on August 5, 2005.

10. On or around November, 2004, Ms. Chisholm applied for advance annual leave due to job related injuries (she required surgery on her wrist for tendinitis). She received initial word from her supervisor, Cyril Erugo, that her request would be approved once it had traveled through the appropriate channels.

11. Shortly thereafter, however, she was notified via telephone by Margarita Durham–a co-worker in the Criminal Finance Division–that her request had been denied by Mr. Erugo.

12. Ms. Chisholm called Mr. Erugo to inquire as to why her request for leave to have surgery had been denied. Mr. Erugo told her he had "too many people in the Division with use-or-loose leave" and that, therefore, "he needed someone there." He also repeatedly told her, "Look, I have a business to run here."

13. Ms. Chisholm, however, required medical attention for her injury. She applied for Workmen's Compensation leave for her job-related injuries, which was granted by the U.S. Department of Labor.

14. Though she stopped coming to the DC Courts for work everyday, Ms. Chisholm testified that was aware of and disapproved of the continued contact that Ms. Galloway maintained with her daughter Shayena.

15. On November 29, 2004, Ms. Galloway took leave from the DC Courts, and escorted Ms. Chisholm's daughter Shayena to the Arlington, VA branch of the Social Security Office to have herself registered as the payee for Shayena's Social Security Disability Insurance in the place of Ms. Chisholm. Ms. Chisholm felt that Ms. Galloway had seriously overstepped all professional and personal boundaries, and as grateful as she once was to Ms. Galloway for helping Shayena, she was now equally troubled by Galloway's conduct.

16. Ms. Chisholm also became aware that Ms. Galloway had told mutual co-workers that Ms. Chisholm was not a good parent to Shayena.

17. Ms. Chisholm confronted Ms. Galloway about her conduct, and asked Ms. Galloway to stop contact with her daughter and to stop discussing her personal affairs at the office. Unfortunately, Ms. Galloway did not cease contact with Shayena, nor did she stop discussing Ms. Chisholm's personal family affairs around the office.

18. Pursuant to the DC Courts Personnel Handbook's Policy 1100, Rita Chisholm filed a grievance memorandum with her supervisor, Cyril Erugo, regarding the denial of her request for leave and, especially, Galloway's conduct relating to her daughter on January 11, 2005. In that memorandum, she informed Mr. Erugo that her work environment had become "hostile" as a result of his denial of leave for her to recuperate and because of Ms. Galloway's conduct. She also described Ms. Galloway's trip to the Arlington Social Security office with her daughter and indicated her concerns that Ms. Galloway was spreading false, personal information about her and her family to her co-workers and her supervisors. She further indicated that she was concerned that Ms. Galloway had influenced Mr. Erugo's decision to deny her application for advance annual leave by discussing with him some of the personal information Shayena had relayed to Ms. Galloway. She informed Mr. Erugo that, for several months prior, Ms. Galloway had called Shayena "to find out information regarding [Chisholm's] medical situation and [her] personal whereabouts." She described Ms. Galloway's attempts to smudge her professional reputation as "zealous," and expressed her belief that all co-workers "have a responsibility to work and conduct themselves with the utmost respect for themselves and the others they work with." Ms. Chisholm requested that Mr. Erugo investigate the situation and respond to her. He did neither.

19. On February 8, 2004, Shayena Johnson petitioned a Virginia court to issue her mother a stay-away order. Ms. Chisholm testified that she was initially surprised and did not understand why Shayena had taken such a course of action. She testified that she later learned, however, that Shayena had acted at the suggestion and encouragement of Jennifer Galloway, who told Shayena how to go about getting the court order. Ms. Chisholm's testified that on

February 10, 2005, she came home from a physical therapy appointment (related to her Workmen's Compensation injuries) to find Shayena on the phone with Ms. Galloway. She heard Ms. Galloway tell Sheyena that Ms. Galloway was going to have Ms. Chisholm "written up," and that Ms. Chisholm "may not have a job for being out so long" on Workmen's Compensation leave. Frustrated that Ms. Galloway continued to interfere with her professional life and her personal life, Ms. Chisholm instructed Sheyana to hang up the phone immediately and to have no further contact with Galloway.

20. On February 14, 2004, Shayena's allegations against her mother were dismissed by the Virginia court and the case was closed after it was established that Shayena had not been abused and was prone to manufacturing stories about her mother.

21. On February 20, 2005, because her January 11th memorandum had apparently been ignored by her supervisors, Ms. Chisholm went to COPE , Incorporated, the designated Employee and Workplace Assistance Program (EAP) to get assistance dealing with the stress brought on by the conflict with Ms. Galloway. COPE provides a counselor to any employee of the DC Courts who has "personal and/or workplace concerns" and advises that employee on how to manage and/or remedy those concerns.

22. Ms. Chisholm was assigned an EA Specialist, Marta McKinnon, LPC, M.Ed., on February 21, 2005. She discussed with Ms. McKinnon the hostile work environment that had resulted from Ms. Galloway's conduct. She also expressed to Ms. McKinnon her feeling that her supervisors were unsympathetic to her grievances regarding Ms. Galloway's conduct because of

the leave she had taken for her job-related injuries, and that because of this her supervisors were more inclined to show deference in believing the gossip and rumors spread by Ms. Galloway. She told Ms. McKinnon that she was frustrated by Ms. Galloway's insistence on maintaining contact with her daughter, Shayena, and that she wanted a transfer to another division within the DC Courts to distance herself from Jennifer Galloway.

23. Mr. Dana Friend, Deputy Chief Financial Officer confirmed that he had spoken with a representative from COPE, as confirmed in a memorandum by Mr. Anthony Rainey, Chief Financial Officer's memorandum to Anne Wicks dated June 30, 2005.

24. Ms. Chisholm grew further distressed that Mr. Erugo had failed to respond to her grievance complaint as required by the DC Courts Personnel Handbook, so pursuant to the procedures outlined in Policy 1100, she filed a second grievance with Mr. Erugo's supervisor, Dana Friend, on March 11, 2005.

25. In that memorandum Ms. Chisholm requested a detail to another division within the DC Courts. She explained to Mr. Friend how Ms. Galloway's conduct had effected her personally and professionally, and suggested that the best course of action would be a transfer away from Ms. Galloway. She asked that Mr. Friend look into the matter and call or write her at home (since she was still on Workmen's Compensation leave).

26. Subsequent to this Memorandum, in a phone call to Ms. Chisholm, Mr. Friend discussed the conflict between she and Ms. Galloway wherein he offered to look for another

placement for Ms. Chisholm.  He agreed over the telephone to respond to Ms. Chisholm in writing, but, like Mr. Erugo, Mr. Friend failed to follow-up on her Policy 1100 grievance.

27.  Ms. Chisholm knew that Mr. Friend and Ms. Galloway enjoyed a close personal relationship off the job site, and she believed that this may account for Mr. Friend's failure to act on her grievance complaint.  Mr. Friend recruited Ms. Galloway to work at the Courts after having been very favorably impressed by her in his interaction with her at her previous employment.

28.  The next direct contact that Ms. Chisholm received from her employer–without having received word on her Policy 1100 grievances from Mr. Friend or Mr. Erugo – was a notice of termination based on the allegations by Ms. Galloway.

29.  None of the management officials involved in proposing, investigating or carrying-out the termination contacted or attempted to contact Ms. Chisholm to ask even a single question about the allegations made by Ms. Galloway.

30.  On March 29, 2005, Ms. Chisholm was at home and overheard Shayena (who was in her bedroom) on the home telephone line with Ms. Galloway.  Ms. Chisholm was angered that Ms. Galloway was still in contact with Sheyana, and she picked up the phone to tell her daughter to end the call.  Both Ms. Chisholm and Ms. Galloway admit that a heated conversation between Ms. Chisholm and her daughter ensued, with Ms. Galloway still on the line.

31. Ms. Galloway later accused Ms. Chisholm of having threatened her during this telephone conversation on Sunday, April 3, 2005.

32. On or around April 4, 2005, Ms. Chisholm testified, she collected her daughter from an Arlington courthouse after a civil commitment hearing resulting in her release.  Ms. Chisholm escorted her daughter from the courthouse to the Metro subway system with the hope that Sheyana would return home with her.  Ms. Chisholm's uncontested testimony is that Shayena refused to return home, opting instead to take the metro to Ms. Galloway's house, where she had been invited for a sleep-over.

33. Concerned for her daughter's safety and well-being, Ms. Chisholm testified she asked a close family friend, Mitchell Epps, to call Ms. Galloway's house to check on Shayena. Ms. Chisholm testified that Mr. Epps reached Shayena at Ms. Galloway's house and that Shayena told him that Ms. Galloway was going to "have [her] mother fired" and that she was going to make herself the payee on Shayena's Social Security Disability Insurance checks.

34. Mr. Epps heard Ms. Galloway in the background shouting, "Shut up!  Don't tell him all our plans!"  Before Shayena ended the call with Mr. Epps, she told him that Ms. Galloway had given her a "brown cigarette" that was "some kind of painkiller."

35. On April, 7, 2005, Shayena was admitted to the Virginia Hospital Center in Arlington for further treatment of her mental disorders.  While in the hospital, Shayena tested positive for consumption of "tricyclics," the intoxicating agent of marijuana.

36. Shortly thereafter Ms. Chisholm learned an arrest warrant for her had been issued based on a police report filed by Ms. Galloway, she voluntarily turned herself in to the police, and was processed and released.  As part of this process, without any such request by Ms. Galloway, the court order releasing Ms. Chisholm included a directive to stay away from Ms. Galloway.

37. A memorandum from Mr. Anthony Rainey, Chief Financial Officer, dated June 30, 2005 confirms that management considered the stay away order as an important justification for terminating Ms. Chisholm.

38.  Ms. Chisholm testified that based on her counsel's advice she agreed to a diversion program that included a requirement that she conduct 40 hours of community service.  She testified that her understanding of this program was that if she completed the program and a subsequent probationary period without further incidents the charges against her would be dropped, and that she could petition to have the arrest record expunged.  She did not admit guilt during these Court proceedings.

 39.  None of the managers involved in proposing, authorizing or implementing the decision to terminate Ms. Chisholm verified the status of the court case, investigated whether the allegations had been proven, or discussed the "stay-away" order with Ms. Chisholm or the Magistrate Judge who issued it.

40.  Mr. Rainey issued a memorandum to Ms. Chisholm on April 18, 2005, indicating his

tentative agreement with Mr. Friend's recommendation that she be terminated. That letter cites a memorandum to Dana Friend as the basis for Ms. Chisholm's termination. In essence, the cited memorandum outlines allegations made by Ms. Galloway against Ms. Chisholm.

41. On August 5, 2005, Ms. Chisholm was removed from service at the Superior Court. Among the reasons stated in the removal letter was the allegations by Ms. Galloway and the criminal matter that resulted, which the Court viewed as a violation of their personnel policy.

42. Subsequent to Ms. Chisholm's removal, Ms. Galloway and at least one other Court employee in Budget and Finance Division was also arrested on criminal charges. Rather than terminating those employees, who, according to knowledge and belief, are under age 45, were transferred, reassigned, or otherwise suffered no, or far less severe, employment action than Ms. Chisholm.

43. On or about September 21, 2006, Ms. Chisholm received an completed Equal Employment Opportunity Commission (EEOC) Form 161, indicating the EEOC had closed her case and informing her of her right to file this claim in Federal District court.

## IV. CLAIMS FOR RELIEF

Count 1. Violations of the Age Discrimination in Employment Act

44. Plaintiff re-alleges paragraphs numbered 1-42 above.

45. The plaintiff was treated in a discriminatory manner in violation of 29 USC 621, et seq., when younger employees in her division who allegedly engaged in activity similar to that

which the Courts claimed was the reason for terminating Plaintiff, did not suffer the same adverse personnel actions.

### Count 2.  Violations of the Rehabilitation Act/Americans With Disabilities Act

46. Plaintiff re-alleges paragraphs 1-44 above.

47. Ms. Chisholm's managers proposed Ms. Chisholm's termination because of her long absence from work due to the disabling injuries to her wrist and ankle, which resulted in her inability to come to work.  At least one of these injuries substantially limited her ability to perform a central duty of her position (operating a computer keyboard) and constitutes a substantial limitation of a major life activity.

48. Rather than attempting to accommodate Ms. Chisholm, the Courts terminated her employment in violation of the Act.

### Count 3. Wrongful Termination in Violation of Public Policy

49. Plaintiff re-alleges paragraphs 1-46 above.

50. Pursuant to the District of Columbia Courts Comprehensive Personnel Policies §1100 the Court has an explicitly stated policy that "[e]very effort shall be made to resolve grievances promptly and equitably in order to maintain a healthy work environment and preserve positive employee attitudes."  The purpose of these policies, as stated in policy §110, is to assure that the "District of Columbia ha[s] a comprehensive and fair personnel system which shall protect employees . . . against coercion and *undue pressure*." (emphasis added).  The Court violated

policy §1100 by failing to follow up on and resolve the two grievances Plaintiff filed alleging that Plaintiffs co-worker was harassing her. As a result, Plaintiff was continually harassed by her co-worker, which created a situation where Plaintiff was forced to work under undue pressure, in violation of policy §110.

51. Plaintiffs termination, after working 19 years for the courts without issue, is directly related to the Courts violation of their own stated public policy. Had the Court made every effort to resolve her grievances promptly and equitably Plaintiff would not have been in the position that ultimately led to her termination.

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests the following relief be granted for both Counts above:

1. Reinstatement, with full back pay and benefits to her position at the Court;

2. Compensatory damages for injury to the Plaintiff, including but not limited to injury to her professional reputation and standing, mental health and well being, Physical health and well being, career and income potential;

3. All other relief which law and equity may provide , including the costs, expenses and disbursements necessary to pursue this action and reasonable attorney fees.

## JURY DEMAND

Plaintiff request a trail by jury for all issues so triable.

Respectfully Submitted,

DOUG HARTNETT

October 30, 2007

           _____/s/_____
           F. Douglas Hartnett
           Elitok and Hartnett at Law, L.L.C.
           2428 Wisconsin Avenue, NW
           Washington, DC  20007
           (202) 965-0529 / (202) 965 0530 (fax)

           Counsel for Plaintiff