# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

RITA E. CHISHOLM,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　)　　Civil Action No. 06-02174 (RBW)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
DISTRICT OF COLUMBIA,　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendant.[1]　　　 )

_____)

## MEMORANDUM OPINION

　　　　Rita Chisholm, the plaintiff in this civil lawsuit, seeks to recover compensatory damages and also requests injunctive relief for alleged unlawful discrimination against her by her former employer, the District of Columbia Courts,[2] under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-31, 633-34 (2000), Second Amended Complaint ("Am. Compl.") ¶ 45, and under both the American's With Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117 (2006), and the Rehabilitation Act 29 U.S.C. §§ 791, 794(a) (2006), Am. Compl. ¶¶ 47-48.  In addition, the plaintiff asserts a wrongful discharge claim against the defendant.  Am. Compl. ¶¶ 50-51.  Currently before the court is the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Defendant's Motion for Summary Judgment ("Def.'s

---

[1] Although the plaintiff worked for the District of Columbia Courts, as indicated in the caption, this is an action against the District of Columbia Government.  See June 4, 2007 Memorandum Opinion; February 12, 2008 Second Amended Complaint ¶ 2.

[2] The plaintiff's original complaint also named Ann B. Wicks as a defendant in her official capacity as the Executive Officer of the District of Columbia Courts.  Complaint ¶ 2.  The claims against Ms. Wicks were dismissed by the Court upon a finding that she was improperly named as a defendant in this case.  June 4, 2007 Memorandum Opinion.

Mot.").  After carefully considering the parties' pleadings, the defendant's motion and the

plaintiff's opposition, and all memoranda of law and exhibits submitted with these filings,[3] the

Court concludes the defendant is entitled to summary judgment on all of the plaintiff's claims.

## I.  BACKGROUND

The following facts are either admitted or not in dispute.[4]  The plaintiff worked for the

District of Columbia Courts ("Courts") for nearly 19 years commencing in 1985.  Def.'s Stmt.

¶¶ 1, 4.  At the time of the termination of her employment on August 5, 2005, the plaintiff was

approximately 56 years old.  Pl.'s Opp'n at 4.  Her last position with the Courts was working as a

clerk in the Criminal Finance Department.  Def.'s Mem. at 4.  Some of the plaintiff's job

responsibilities required her use of a computer and calculator.  Pl.'s Opp'n, Exhibit ("Ex.") 2

(Deposition of Rita Elizabeth Chisholm) ("Chisholm Dep.") at 92.  During the summer of 2004,

the plaintiff was diagnosed with tendonitis in her right wrist and shortly thereafter she began

receiving physical therapy to treat the problem.  Pl.'s Opp'n, Ex. 3 (Medical Documents).

Pursuant to a specific recommendation by her physical therapist on October 20, 2004, id., the

defendant provided the plaintiff an accommodation for the problem with her wrist in the form of

5 minutes of rest for every 15 minutes of work.  Def.'s Mem., Ex. D (Accommodation Letter).

---

[3] In addition to the plaintiff's second amended complaint, the defendant's answer, and the Defendant's Motion for Summary Judgment, the Court considered the following documents in reaching its decision: (1) the Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), (2) the Defendant's Statement of Undisputed Material Facts in Support of the Defendant's Motion for Summary Judgment ("Def.'s Stmt."), (3) the Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Resp."), (4) the Plaintiff's Memorandum of Points and Authorities in Opposition to the Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), and (5) the Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Def.'s Reply").

[4] Unless otherwise indicated, all of the facts set forth in this opinion are either admitted by both parties or are otherwise undisputed.

Thereafter, on November 9, 2004, the plaintiff allegedly "tripped and tore the ligament in [her] right [ankle]" while at work.  Id., Ex. A (Chisholm Dep.) at 68; Pl.'s Opp'n at 6.[5]

Sometime in early November 2004, the plaintiff met with her supervisor, Cyril Erugo, the Chief of the Court's Finance and Banking Branch, to request advanced medical leave.[6]  Def.'s Stmt. ¶ 3; Def.'s Mem., Ex. A (Chisholm Dep.) at 129; Pl.'s Opp'n at 6.  The plaintiff alleges that Mr. Erugo initially indicated "that her request would be approved once it traveled through the appropriate channels."  Pl.'s Opp'n at 6.  However, the request for advance leave was ultimately denied once the plaintiff's record was reviewed, id., because according to Mr. Erugo, the plaintiff's record revealed "a pattern of taking leave without advanced request[,]"  Pl.'s Opp'n, Ex. 10 (Deposition of Cyril Erugo) ("Erugo Dep.") at 127, which was considered an abuse of the Court's policy on personal leave, id., Ex. 13 (Letter Denying Reconsideration for Advanced Leave) ("Reconsideration Denial Letter").[7]  The plaintiff then applied for and was granted worker's compensation payments and she has not returned to work since November 9, 2004.  Def.'s Stmt. ¶ 7; Def.'s Mem., Ex. A (Chisholm Dep.) at 67-68.

---

[5] While the defendant acknowledges the fall and resultant ankle injury in both its Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Def.'s Mem. at 15, and the Defendant's Statement of Undisputed Material Facts in Support of the Defendant's Motion for Summary Judgment, Def.'s Stmt. ¶ 6, the acknowledgement is qualified by the use of the term "alleged."  Thus, the defendant seemingly disputes whether the plaintiff actually injured her ankle.  In addition, unlike the plaintiff's tendonitis in her wrist, the only documentation included in the record provided by either party demonstrating that the plaintiff sought medical attention for her injured ankle is a hand written notation by the plaintiff stating that she visited the Court's nurse who recommended that she go to the hospital.  Pl.'s Opp'n, Ex. 4(Letter to Cyril Erugo Appealing the Plaintiff's Request for Advanced Leave and Grievance dated January 11, 2005) ("Grievance Letter").

[6] The record demonstrates that the plaintiff made her request before the purported injury to her ankle, which allegedly happened on November 9, 2004.  Def.'s Mem., Ex. A (Chisholm Dep.) at 129 (The plaintiff submitted deposition testimony indicating that she requested the advance leave "before [she] tore [the] ligaments in [her] ankle.").  Moreover, in a letter from the plaintiff to Mr. Erugo appealing the denial of her requested advanced leave, the plaintiff only mentions her injured wrist, and not her ankle.  Pl.'s Opp'n, Ex. 4 (Grievance Letter).

[7] According to Mr. Erugo, "advance leave" is awarded to an employee based on the number of days worked in a given year.  Pl.'s Opp'n, Ex. 10 (Erugo Dep.) at 127-30.  The employee must tell her manager in advanced when she will be taking a day off.  Id.  However, in the case of emergencies, a manager has the discretion to grant a leave of absence without notice.  Id.  In addition, an employee may apply for "advance leave," which is essentially the advancement of leave with pay to an employee even though it "[has not] quite [been] earned yet."  Id. at 129.

During the several years before the termination of her employment, the plaintiff and a coworker named Jennifer Galloway formed a social relationship.  Def.'s Stmt. ¶ 8.  At the encouragement by the plaintiff, Ms. Galloway also formed a social relationship with the plaintiff's daughter, who suffers from emotional disorders and is learning disabled.  Id. ¶ 9.  Sometime after the plaintiff began receiving worker's compensation payments and before the termination of her employment, the social relationship between the plaintiff and Ms. Galloway disintegrated due to the escalation of the relationship between Ms. Galloway and the plaintiff's daughter.[8]

On January 11, 2004, while not reporting to work and receiving worker's compensation payments, the plaintiff sent to Mr. Erugo a grievance letter, which included an appeal for the reconsideration of her request for advanced leave.  Pl.'s Opp'n, Ex. 4 (Grievance Letter); Pl.'s Opp'n at 7-8.  The Grievance Letter provided an additional reason for the plaintiff's request for advanced leave: that she was "given a list of specific jobs that would require more usage of [her] hand" after the accommodation was provided by the defendant.  Id., Ex. 4 (Grievance Letter).  In addition, the Grievance Letter detailed the tumultuous relationship between Ms. Galloway, the plaintiff's daughter, and the plaintiff and provided other allegations regarding the plaintiff's personal relationship with coworkers.[9]  Id.  On approximately February 20, 2005, while still

---

[8] Both the plaintiff and the defendant devote significant portions of their respective memoranda to arguments, points of contentions and allegedly hostile events that occurred between the plaintiff and Ms. Galloway.  In particular, the plaintiff alleges that Ms. Galloway took a leave of absence from work on November 29, 2004, in order to register herself as the payee for the plaintiff's daughter's Social Security benefits.  Pl.'s Opp'n at 7.  While these events are suggestive of strong feelings of animosity between the two former coworkers, the only event that is particularly relevant to the claims made by the plaintiff in this case is the physical threat allegedly made over the telephone by the plaintiff to Ms. Galloway, as discussed hereafter.

[9] The Grievance Letter alleges that Ms. Galloway took a leave of absence from work to reregister herself as the payee of the plaintiff's daughter's Social Security benefits.  Pl.'s Opp'n, Ex. 4 (Grievance Letter) at 1; see supra note 7.  Moreover, the plaintiff alleged in the Grievance Letter that Ms. Galloway "constantly called [her] daughter, to find out information . . . regarding [the plaintiff's] medical situation and [ ] personal whereabouts."  Id. at 2.  The
(. . . continued)

receiving worker's compensation, the plaintiff began workplace counseling through COPE, Inc.,

the defendant's designated employee assistance program. Pl.'s Opp'n at 9. On March 9, 2005,

Mr. Erugo responded to the Grievance Letter maintaining his original recommendation to deny

the plaintiff's request for advance leave. Pl.'s Opp'n, Ex. 13 (Reconsideration Denial Letter).

The plaintiff responded to the second denial of advance leave on March 11, 2005, through a

letter to Dana Friend, the Deputy Chief Financial Officer of the Courts, requesting a transfer to a

new division. Pl.'s Opp'n, Ex. 5 (Letter Requesting Transfer).

On April 3, 2005, the plaintiff called Ms. Galloway's cellular telephone and threatened to

physically harm Ms. Galloway. Def.'s Stmt. ¶¶ 10-21; Def.'s Mem., Ex. E (Affidavit in Support

of An Arrest Warrant for Rita Chisholm) ("Arrest Warrant"). On April 4, 2005, Ms. Galloway

filed a criminal complaint with the Metropolitan Police because of the threat by the plaintiff and

a warrant was issued for the plaintiff's arrest. Def.'s Stmt. ¶ 12; Def.'s Mem., Ex. E (Criminal

Complaint). [10] The plaintiff was arrested on the warrant by the Metropolitan Police Department

on April 26, 2005 for "threats to do bodily harm." Def.'s Mem., Ex. F (Arrest/Prosecution

Report). Following her arrest, the plaintiff was released and ordered to stay "at least 100 yards"

away from Ms. Galloway. Def.'s Mem., Ex. G (Release Order Addendum) ("Restraining

Order").

On June 30, 2005, Anthony Rainey, the Chief Financial Officer of the Budget and

Finance Division of the Courts, sent a letter to Anne Wicks, the Executive Officer of the Courts,

---

(. . . continued)
Grievance Letter also indicated that Ms. Galloway and other coworkers were conspiring against her to create the
impression that the plaintiff "was abusing leave and fabricating [her] medical condition [.]" Id.

[10] According to the warrant for the plaintiff's arrest, Ms. Galloway stated that the plaintiff said to her "I'm gonna kill
you. I'm gonna get you. You fucking Bitch. I am gonna get you, you black bitch, I'm gonna get you if it's the last
thing I do." Def.'s Mem., Ex. E (Arrest Warrant). An unidentified witness allegedly overheard the conversation
and corroborated the statements in the Arrest Warrant. Id.

recommending the plaintiff's termination.  Pl.'s Opp'n, Ex. 7 (Letter Recommending

Termination).  Mr. Rainey made the recommendation "based upon the documentation,

memoranda, and witness corroboration [ ] received in connection with the threats that [the

plaintiff] reportedly made to [Ms. Galloway.]"  Id.  On July 5, 2005, the plaintiff signed a First

Time Offender Diversion Agreement in which she admitted "criminal responsibility" in the

criminal case involving the threat against Ms. Galloway.  Def.'s Mem., Ex. H (First Time

Offender Diversion Agreement).  Pursuant to the defendant's policy of "zero tolerance on

violence and threats in the office," and the plaintiff's admission of criminal responsibility for the

threat, the recommendation for termination was accepted.  Pl.'s Mem., Ex. 9 (Deposition of Dana

A. Friend) ("Friend Dep.") at 121-22, 158.  The plaintiff was then sent a letter by Ms. Rainey on

July 25, 2005, notifying the plaintiff that Ms. Wicks had approved her termination effective on

August 5, 2005.  Def.'s Mem., Ex. C (Notice of Termination).

        In November 2005, Ms. Galloway, who at the time was under 45 years old, was arrested

for the possession of narcotics, an event entirely unrelated to this case.  Def.'s Stmt. ¶ 19; Def.'s

Mem., Ex. I (Criminal Records).  Upon learning of the arrest and confirming that the charges

were not related to a violent crime, Mr. Friend suspended Ms. Galloway.  Def.'s Mem., Ex. B

(Friend Dep.) at 66-67.  The criminal charges against Ms. Galloway were later dropped, Def.'s

Mem, Ex. I (Criminal Records), and upon confirmation of the dismissal, Mr. Friend reinstated

Ms. Galloway to her position in the finance department, id., Ex. B (Friend Dep.) at 66.

        In September of 2006, the plaintiff received a letter from the Employment Opportunity

Commission indicating that "they had closed her case and informing her of her right to file [a

claim] in federal district court."[11]  Am. Compl. ¶ 43.  The plaintiff filed her complaint in this

court on December 21, 2006, naming as defendants the Superior Court of the District of

Columbia and Ann B. Wicks in her capacity as the Executive Officer of the District of Columbia

Courts.  The Court granted Ms. Wick's motion to dismiss and ordered the plaintiff to file an

amended complaint naming only the District of Columbia as the defendant.  June 4, 2007

Memorandum Opinion.  The plaintiff complied with that instruction, and on February 12, 2008,

she filed her Second Amended Complaint alleging (1) that she was treated in a discriminatory

manner "when younger employees in her division . . . engaged in activity similar to that which

the Courts claimed was the reason for terminating [her]," Am. Compl. ¶¶ 44-45; (2) that "[r]ather

than attempting to accommodate [her]," the Courts terminated her "because of her long absence

from work due to the disabling injuries to her wrist and ankle," Am. Compl. ¶¶ 46-48; and (3)

that the Courts wrongfully terminated her employment by violating its policy of making "[e]very

effort . . . to resolve [employee] grievances promptly and equitably . . . [,]" Am. Compl. ¶¶ 49-

51.

        The defendant filed its motion for summary judgment on September 9, 2008.  In support

of its motion, the defendant argues that the plaintiff has failed to establish a <u>prima facie</u> case of

age discrimination under the ADEA, Def.'s Mem. at 5-9, and that even if a <u>prima facie</u> case of

age discrimination has been established, it has proffered a legitimate, non-discriminatory reason

for terminating the plaintiff's employment, <u>id.</u> at 9-10.  In addition, the defendant contends that

the plaintiff cannot prove her claims asserted under either the ADA or the Rehabilitation Act

because she has failed to show that she is disabled, that the defendant failed to accommodate her

alleged disabilities, and that her alleged disabilities were the reason for her termination.  <u>Id.</u> at

---

[11] While this letter does not appear as an exhibit to any of the pleadings or memoranda filed by the plaintiff, its existence has not been challenged by the defendant.

11-17. The defendant also argues that the plaintiff has not asserted "an actionable claim for wrongful discharge." Id. at 18-21.

The plaintiff counters that she "can establish a prima facie case of age discrimination[,]" that she is "a qualified individual with a disability . . . or is perceived as disabled by [the defendant,]" and that there are genuine issues of material fact as to whether the defendant "made a reasonable accommodation under the [ADA and Rehabilitation Act.]" Pl.'s Resp. ¶¶ 1-3. In addition, the plaintiff argues that she was terminated "in violation of [the defendant's] stated employment policy, . . . which constitutes wrongful termination under the common law exception to the at-will doctrine." Id. ¶ 4.

In addition to reiterating its arguments advanced in its initial memorandum of law, the defendant argues in reply that the plaintiff's wrongful termination claim should be dismissed by the Court because of her failure to "exhaust her administrative remedies" under the District of Columbia's Comprehensive Merit Personnel Act ("CMPA"), D.C. Code §§ 1-601.01 - 1-607.08 (2001), "before [judicially] challenging an adverse employment action[.]" Def.'s Reply at 7-9.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), courts will grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). The Court must also draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The nonmoving party, however, cannot rely on "mere

allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation marks omitted), and "conclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal citations omitted).  Instead, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and internal quotation marks and citation omitted).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In other words, by pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  Id. at 322.  On the other hand, the nonmoving party may defeat summary judgment through factual representation made in a sworn affidavit, Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999), or by providing "direct testimonial evidence," Arrington v. United States, 473 F.3d 329, 338 (D.C. Cir. 2006).  Finally, it should be noted that because of the difficulty of establishing discriminatory intent, "an added measure of rigor . . . or caution . . . is appropriate in deciding motions for summary judgment in employment discrimination cases."  Aka v. Wash. Hosp. Ctr., 116 F.3d 876, 879-80 (D.C. Cir. 1997) (internal quotation marks and citations omitted), rev'd on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc).

### III.  LEGAL ANALYSIS

A.  The Plaintiff's ADEA Claim

The defendant argues that the plaintiff has failed to establish a prima facie case of age discrimination under the ADEA, Def.'s Mem. at 5-9, and that even if the plaintiff has established a prima facie age discrimination case, it has provided a legitimate, non-discriminatory reason for terminating the plaintiff's employment, id. at 9-10.  The ADEA provides in pertinent part that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C § 623(a)(1).  However, it is not "unlawful for an employer . . . to discharge or otherwise discipline an individual for good cause." Id. § 623(f)(3).  In analyzing a discrimination claim under the ADEA, courts apply the framework developed in Title VII, 42 U.S.C. §§ 2000a-2000h, litigation.  Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999).  The Title VII framework, first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, requires the plaintiff to "establish a prima facie case of discrimination" in the absence of direct evidence of discrimination.  Reeves v. Sanderson Plumbing Prods., Inc, 530 U.S. 133, 142 (2000).  In order to establish a prima facie case in the context of an ADEA employment termination claim, the plaintiff must show that she (1) belongs to the statutorily protected age group, (2) she was qualified for the position, (3) she was terminated, and (4) she was disadvantaged in favor of a younger person.  Hall, 175 F.3d at 1077; Jones v. Bernanke, 493 F. Supp. 2d 18, 27 (D.D.C. 2007), aff'd, 557 F.3d 670 (D.C. Cir. 2009).

Upon the plaintiff establishing a prima facie case of discrimination based on age, the burden then shifts to the defendant, "who must articulate some legitimate, non-discriminatory

reason for the adverse action." <u>Czekalski v. Peters</u>, 475 F.3d 360, 363 (D.C. Cir. 2007) (internal

citation and quotation marks omitted).  The employer must clearly set forth, "through the

introduction of admissible evidence, reasons for its actions which . . . would support a finding

that unlawful discrimination was not the cause of the employment action." <u>Hall</u>, 175 F.3d at

1078 (internal citation and quotation marks omitted).  If the defendant sets forth such evidence,

then the burden shifts back to the plaintiff to show "that the defendant's proffered reason is but a

pretext for discrimination." <u>Paquin v. Fed. Nat'l Mortgage Ass'n</u>, 119 F.3d 23, 26-27 (D.C. Cir.

1997) (citing <u>McDonnell Douglas</u>, 411 U.S. at 804).

For the reasons set forth below, the plaintiff's ADEA claim cannot survive the

defendant's summary judgment motion.

<u>1.  The Plaintiff's Prima Facie Case of Discrimination</u>

The defendant argues first that "the plaintiff cannot prove a prima facie case of [age

discrimination] as there exists no evidence [that she was disadvantaged in favor of a younger

person.]"  Def.'s Mem at 6.  In particular, the defendant argues that the plaintiff is unable to

show that when she was terminated for threatening another employee, she was disadvantaged in

favor of a younger person, and thus, the plaintiff has not satisfied the fourth element of the <u>prima

facie</u> case requirement. <u>Id.</u>; <u>see</u> <u>Hall</u>, 175 F.3d at 1077.  The plaintiff responds by alleging that

her supervisor failed to properly respond to the concerns she raised in the Grievance Letter

mailed to him by the plaintiff on January 11, 2005; however, these concerns related to a conflict

between the plaintiff and her co-worker (Ms. Galloway) regarding a matter totally unrelated to

their jobs.  Pl.'s Opp'n at 14-16.  The plaintiff fails to address the challenges made by the

defendant to the sufficiency of her ADEA claim and provides no legal support for why the allegations advanced in her opposition amounts to a cognizable claim under the ADEA. [12]

The District of Columbia Circuit has recently reaffirmed that in an ADEA case, once an employer asserts a legitimate nondiscriminatory reason for its actions, "it has done everything that would be required if the plaintiff has properly made out a prima facie case." Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (citing U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)) (internal quotation marks omitted). Thus, whether a prima facie case has been established "drops" from the case and the only question is whether there existed "discrimination vel non." Id.; see Brady v. Office of Segeant at Arms, 520 F.3d 490, 492 (D.C. Cir. 2008) (holding that "the question whether the plaintiff in a disparate-treatment discrimination suit actually made out a prima facie case is almost always irrelevant when the district court considers an employer's motion for summary judgment").

Here, both the record and the defendant's memorandum make clear that "the plaintiff was terminated for the threats made against a coworker and the subsequent criminal proceedings against her." Def.'s Mem. at 10; Def.'s Mem., Ex. B (Friend Dep.) at 121-122. Thus, the Court need not decide whether the plaintiff actually made out a prima facie case under the McDonnell Douglas standard before moving to the next issue. Jones, 557 F.3d at 678. Nevertheless, in deciding whether the defendant's proffered reason for the alleged termination was pretextual, the Court must consider "relevant categories of evidence" including whether the plaintiff has made out a prima facie case in deciding whether the defendant's proffered reason for the alleged

---

[12] In addition to not addressing any of the legal or factual arguments made by the defendant, the plaintiff's response entirely ignores her actual claim made in her complaint: that the alleged discrimination arose from the fact that she was terminated for engaging in criminal activity, whereas "younger employees in her division who allegedly engaged in activity similar to that which the [defendant] claimed was the reason for terminating the [plaintiff] did not suffer the same adverse personnel actions." Am. Compl. ¶ 45.

termination was pretextual.  Id. at 678-679 (internal citations and quotation marks omitted).  The Court will therefore assess whether the plaintiff has pled a prima facie case of discrimination based on her age.

The defendant argues that the plaintiff cannot prove a prima facie case of age discrimination because she "cannot demonstrate a genuine issue of material fact with respect to whether . . . the activities for which she and Ms. Galloway were arrested are 'similar,' or whether [they are] 'similarly situated employees.'"  Def.'s Mem. at 7.[13]  The plaintiff does not directly respond to this argument in her opposition beyond stating that she was treated "very differently than her younger coworker who was also arrested for alleged criminal activity."  Pl.'s Opp'n at 4; see supra note 12.  The Court agrees with the defendant.

To satisfy the final prong of a disparate treatment claim, a plaintiff must show that she was "treated differently from similarly situated employees who are not part of the protected class."  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005); see Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir 1999) (holding that in a sexual discrimination case, "[t]o prove that she is similarly situated to a male employee, a female plaintiff must demonstrate that she and the allegedly similarly situated male employee were charged with offenses of 'comparable seriousness'" (internal citations omitted)); Udoh v. Trade Ctr. Mgmt. Assocs., 479 F. Supp. 2d 60, 64 (D.D.C. 2007) (holding that one way a plaintiff can show that an adverse action gives rise to an inference of discrimination is by demonstrating that he was treated less favorably than similarly situated employees who are not part of plaintiff's protected class or classes.)  The plaintiff has not made this showing.

---

[13] The defendant does not dispute that the plaintiff was in the statutorily protected age group when her employment was terminated, that she was qualified for her job, or that she was in fact terminated.

The plaintiff was arrested for "threats to do bodily harm" to a coworker, Ms. Galloway. Def.'s Mem., Ex. F (Arrest/Prosecution Report). Several weeks after being arrested and having a restraining order issued against her, the plaintiff admitted to threatening Ms. Galloway and accepted criminal responsibility for that crime. Id., Ex. H (First Time Offender Diversion Agreement) ("I admit criminal responsibility in this case."). The crime to which she admitted committing directly violated the Courts' policy of "zero tolerance on violence and threats in the office[.]" Pl.'s Opp'n, Ex. 9 (Friend Dep.) at 121. As a result, the plaintiff was terminated from her employment. Def.'s Mem., Ex. C (Recommendation for Termination). On the other hand, Ms. Galloway, who is the only coworker the plaintiff has identified as having been treated differently by the Courts, was arrested for possessing narcotics that were allegedly found in her home, a crime that was totally unrelated to her employment or to anyone associated with her job. Def.'s Stmt. ¶ 19; Def.'s Mem., Ex. I (Docket Sheet). Upon learning of Ms. Galloway's arrest, she was suspended from her job and placed on administrative leave. Pl.'s Opp'n, Ex. 9 (Friend Dep.) at 149. However, the case against Ms. Galloway was ultimately dismissed, Def.'s Mem, Ex. I (Docket Sheet), whereupon the suspension was vacated and after initially being place in another position, Ms. Galloway was reinstated to her position in the finance department, id., Ex. B (Friend Dep.) at 66-67.

These circumstances clearly illustrate that the plaintiff and Ms. Galloway were not similarly situated. On the one hand, the plaintiff admitted threatening to do bodily harm to her coworker. Ms. Galloway, on the other hand, although arrested for possessing narcotics, did not admit to committing the offense, and eventually the case in which she was charged was dismissed. Thus, the plaintiff has failed to make a prima facie showing of discrimination based on the dissimilarity of the situation to which she seeks to compare herself. However, as

discussed above, because the defendant has asserted a legitimate, nondiscriminatory reason for the plaintiff's termination, the Court must nonetheless address the issue of whether the evidence offered by the plaintiff creates a material dispute as to the ultimate issue of discrimination. <u>Jones</u>, 557 F.3d at 678.

<u>2.  The Defendant's Proffered Reason for the Plaintiff's Termination</u>

Considering the reasoning just discussed, the Court concludes that the plaintiff fails to demonstrate a genuine issue of material fact as to whether the reason proffered by the defendant for terminating her employment was merely pretext for discrimination based on the plaintiff's age.  The defendant represents that "the plaintiff was terminated for the threats made against a coworker and the subsequent criminal proceedings against her," and not because of her age. Def.'s Mem. at 10; Pl.'s Opp'n, Ex. 9 (Friend Dep.) at 121.  In addition, the defendant argues that there is no evidence "demonstrating any genuine fact concerning whether or not the plaintiff was terminated for any discriminatory purpose . . . related to her age."  Def.'s Mem. at 10.  The plaintiff does not directly address this argument in her opposition.

In deciding whether the defendant's proffered explanation is merely a pretext for discrimination in the absence of any direct evidence of discriminatory intent, the Court is left to consider whether a jury "could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination[.]"  <u>Aka v. Wash. Hosp. Ctr.</u>, 156 F.3d 1284, 1289 (D.C. Cir. 1998).  In other words, "proffering evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury."  <u>George</u>, 407 F.3d at 413 (internal quotation marks, citations, and alterations omitted).

First, as discussed above, the plaintiff's failure to establish a <u>prima facie</u> case does not lend support to her claim of discrimination, as she has failed to demonstrate that her younger, former coworker, who was not terminated after being arrested, was similarly situated to her. Second, in reviewing all of the evidence that the plaintiff presents to attack the defendant's proffered explanation for its actions, there is nothing from which a jury could find that the plaintiff was terminated because of her age and not because she admitted criminal responsibility for threatening to cause bodily harm to her coworker.  In fact, none of the depositions or documents submitted with either the defendant's memorandum or the plaintiff's opposition would permit a reasonable jury to infer that the plaintiff's age was even a consideration, let alone an actual reason, for the termination of the plaintiff's employment.  All the plaintiff offers besides her failed attempt to demonstrate parity between her encounter with the criminal justice system and her younger, former coworker's encounter is the allegation that her former supervisor, Mr. Erugo, made "half-hearted efforts to mediate" the personal grievances that she was having with her coworker concerning a matter that allegedly occurred outside of the workplace.  Pl.'s Opp'n at 15.  Even when considering the above circumstances in the light most favorable to the plaintiff, there are no genuine issues of material fact upon which a jury could find for the plaintiff, and therefore, the Court must grant the defendant's motion for summary judgment on the plaintiff's ADEA claim.

B.  The Plaintiff's ADA and Rehabilitation Act Claims

The plaintiff alleges that she "is a qualified individual with a disability under [the ADA and Rehabilitation Act], or is perceived as disabled by the [defendant]."  Pl.'s Resp. at ¶ 2.  The plaintiff's alleged disabilities include the "disabling injuries to her wrist and ankle, which resulted in her inability to come to work[,]" Am. Compl. ¶ 47, and her "association with a

disabled individual[,]" her daughter, Pl.'s Opp'n at 17.  In addition, the plaintiff alleges that

regardless of "[w]hether [the plaintiff] was a disabled person under the [ADA and Rehabilitation

Act] . . . her supervisors perceived her as disabled [.]"  Id.

The defendant argues that the plaintiff cannot prove a claim under either the ADA or the

Rehabilitation Act because she has not established that she is disabled, the defendant reasonably

accommodated her alleged disability, and there exists no evidence that the plaintiff was

terminated because of her disability.  Def.'s Mem. at 11-18.  In response, the plaintiff alleges for

the first time that the defendant perceived her as being disabled and that the defendant

discriminated against her because of her association with a disabled person, her daughter.[14]  Pl.'s

Opp'n at 16.  In addition, the plaintiff generally responds that the record demonstrates the

defendant's "inexplicable and vastly different treatment" of a coworker (Ms. Galloway) and

herself is "more than sufficient to raise material factual issues with regard to . . . the ADA [and]

Rehabilitation Act."  Id. at 22.  For the following reasons, the Court agrees with the defendant.

1.  The Plaintiff's Disability or Perceived to Be Disabled Allegations

The ADA provides in pertinent part that no covered employer "shall discriminate against

a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . .

and privileges of employment."  42 U.S.C. § 12112(a) (2006).  A "disability" is defined as a

"physical . . . impairment that substantially limits one or more major life activities of such

individual," id. at § 12102(2)(A), or a person who is "regarded as having such an impairment[,]"

---

[14] The plaintiff inartfully states in her opposition memorandum that "[w]hile she was suffering from injuries that she received on the job, and was temporarily unable to work because of these injuries, she not claim that she is actually a disabled person, but rather that her employer perceived her as disabled."  Pl.'s Opp'n at 16.  The defendant construes this as the plaintiff conclusively indicating "that [she] does not claim that she is actually a disabled person." Def.'s Reply at 4.  While the Court can appreciate why the defendant takes this position, it will nonetheless accord the plaintiff the benefit of the doubt in light of what might be a missing word in the sentence in her memorandum referenced above, and will address the claim that the plaintiff was disabled because her response makes the claim that she is disabled, Pl.'s Resp. ¶ 2, and she makes several similar claims throughout her opposition memorandum and through the incorporation of certain exhibits.

id. at § 12102(1)(C).  The Rehabilitation Act adopts the ADA's definition of disability.  Adams v. Rice, 531 F.3d 936, 943 (D.C. Cir. 2008) (holding that an individual is disabled under the Rehabilitation Act only if she can show that she (1) has a physical impairment which substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment).  Accordingly, the plaintiff has the burden of proving that: (1) she suffers from an impairment, (2) the impairment limits an activity that constitutes a major life activity under the ADA, and (3) the limitation is substantial.  Haynes v. Williams, 392 F.3d 478, 481 (D.C. Cir. 2004).

Whether a person is disabled is an individualized inquiry, and a mere diagnosis of a disease or injury does not mean that a person is disabled.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 483-84 (1999).  Moreover, an impairment alone is insufficient to meet the ADA's definition of disability.  Toyota Motor Mfg. v. Williams, 534 U.S. 184, 195 (2002).[15]  The plaintiff must demonstrate that the impairment limits a "major life activity" and that the limitation is "substantial."  Lytes v. D.C. Water & Sewer Auth., 527 F. Supp. 2d 52, 60 (D.D.C. 2007), aff'd, 572 F.3d 936 (D.C. Cir. 2009).

The defendant acknowledges that while the plaintiff does have at least one impairment, she offers no evidence which demonstrates that any of her alleged impairments limits a major life activity.  Def.'s Mem. at 15.  The plaintiff only generally responds to the defendant's argument, stating that "at a minimum, there exists evidence which creates a material factual question" as to each element of her ADA and Rehabilitation Act claims.  Pl.'s Resp. ¶ 3.  The

---

[15] The ADA Amendments Act of 2008, P.L. 110-325, changes the threshold standard for determining whether an ADA plaintiff is disabled as interpreted in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) and Toyota Motor Mfg. v. Williams, 534 U.S. 184 (2002).  The District of Columbia Circuit recently held that the ADA Amendments Act does not apply retroactively to ADA claims arising before January 1, 2009.  Lytes v. D.C. Water and Sewer Authority, 572 F.3d 936, 941 (D.C. Cir. 2009).  Therefore, the Court must apply the former standard for determining whether the plaintiff was disabled.

Court agrees with the defendant that the plaintiff has not established that she is disabled under the applicable standard because she fails to specify what, if any, major life activity is affected and that the limitation is substantial.

First, the plaintiff fails to specify what, if any, major life activity is affected by either of her alleged impairments. Brown v. Snow, 407 F. Supp. 2d 61, 68 (D.D.C 2005) (holding that summary judgment for the defendant is appropriate where a plaintiff "fails to articulate with any particularity the major life activity substantially limited"). Viewing the record in the light most favorable to the plaintiff, the only possible activity that is affected by either impairment is the plaintiff's ability to work. While the United States Supreme Court has questioned whether "working" actually qualifies as a major life activity, Sutton, 527 U.S. at 492, that issue is irrelevant because here the plaintiff concedes that she could work in a limited or alternative capacity. Pl.'s Opp'n, Ex. 4 (Grievance Letter) (referring to her tendonitis and resultant accommodation as a "job limitation"); Am. Compl. ¶ 47 ("At least one of these injuries substantially limited her ability to perform a central duty of her position[.]" (emphasis added)). In addition, while out of work and receiving worker's compensation, the plaintiff asked the defendant to transfer her to a new department when she returned. Pl.'s Opp'n, Ex. 5 (Letter Requesting Transfer).

Second, assuming arguendo that the plaintiff has alleged that a major life activity was impacted by one of her alleged disabilities, the record does not raise a genuine issue of material fact as to whether the limitation was substantial. See Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 142-43 (D.D.C. 2004) ("[A] person whose daily life activities are not substantially limited, even though her performance at work is subject to physical limitations, is not disabled." (citing Toyota Motor Mfg., 534 U.S. at 201-02)). The extent of the plaintiff's limitation with

regard to her tendonitis was that she needed 5 minutes of rest for every 15 minutes of work as indicated in her physical therapist's recommendation.  Pl.'s Opp'n, Ex. 3 (Medical Documents). Moreover, the plaintiff offers no evidence stating that her alleged ankle injury limited her ability in any degree to work or to perform any other major life activity for that matter.[16]  Therefore, the Court finds that the plaintiff was not disabled as defined by the ADA.

In the alternative, the plaintiff now argues in response to the defendant's summary judgment motion that "her employer perceived her as disabled."  Pl.'s Opp'n at 16 (emphasis omitted).  The defendant replies arguing that it is entitled to summary judgment because the "perceived as disabled" claim was not made in the plaintiff's complaint, Def.'s Reply at 4, but that even if this claim had been raised the "plaintiff's statement of facts contradicts any claim that the District perceived her as disabled," id. at 5.

"In order to proceed under a 'perceived disability' theory, [the plaintiff] 'must show that: (1) [she] was perceived to have a physical impairment and (2) the impairment was perceived to substantially limit one or more of [her] major life activities.'"  Lytes, 527 F. Supp. 2d at 62 (citation omitted).  The mere fact that the defendant knows about the impairment is not enough to succeed under this theory.  Id.  Rather, the plaintiff must prove that her employer believed that she had a physical impairment that substantially limited one or more major life activities. Haynes, 392 F.3d at 482.

The only evidence that the plaintiff offers to suggest that the defendant perceived her as disabled is her own testimony that Mr. Erugo responded to her request for advance leave by telling her that "he wanted people here to work [and] he was running a business."  Pl.'s Opp'n,

---

[16] The record also reflects that not only was the plaintiff able to care for herself and her daughter while she was receiving worker's compensation, but she also cared for her sick aunt and began working with a different employer in July 2006.  Def.'s Mem., Ex. A (Chisholm Dep.) at 169-172.

Ex. 2 (Chisholm Dep.) at 135.  Beyond this testimony, there is nothing in the record that

demonstrates that the plaintiff was perceived as being disabled.  To the contrary, the entire

record establishes, as discussed above, that the plaintiff was able to perform the responsibilities

of her job, the defendant expected her to do so, and she planned to return to work but wanted to

be moved to a different division within the Courts.  Thus, there is no genuine issue of material

fact as to whether the defendant perceived the plaintiff as disabled.

The plaintiff's final argument is that she is qualified as disabled under the ADA and

Rehabilitation Act under the theory of "association discrimination" because of her supervisors'

knowledge of her daughter's disability.  Pl.'s Opp'n at 16-17.  The defendant replies that this

category of disability has not been recognized by this Circuit and that even if it is recognized by

this Court in this case, the plaintiff fails to meet her burden of proving that any alleged

discrimination against her was motivated by the plaintiff's relationship or association with a

disabled person.  Def.'s Reply at 6.  Section 102(b)(4) of the ADA defines the term "discriminate

against a qualified individual on the basis of disability" as including discrimination by an

employer "because of the known disability of an individual with whom the [employee] is known

to have a relationship or association."  42 U.S.C. § 12112(b)(4) (2009); see Den Hartog v.

Wasatch Acad., 129 F.3d 1076 (10th Cir. 1997) (providing a detailed overview of the legislative

history of the amendment that added this definition).  As the defendant points out, the plaintiff

does not provide any case authority from this Circuit that has addressed this form of disability

discrimination.  Nevertheless, other courts have addressed claims arising under this section of the

ADA.  See Dewitt v. Proctor Hosp., 517 F.3d 944, 947 (7th Cir. 2008)  (holding that issues of

material fact were present as to whether the plaintiff was discriminated against by her health care

insurer because of her husband's disability); Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011

(8th Cir. 2005) (holding that a woman on maternity leave caring for her disabled new born qualifies under the association provision); <u>Larimer v. IBM</u>, 370 F.3d 698, 700 (7th Cir. 2004) (holding that "the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person"); <u>Oliveras-Sifre v. Puerto Rico Dep't of Health</u>, 214 F.3d 23 (1st Cir. 2000) (holding that the association provision does not apply to the alleged discrimination of those who advocate on behalf of the disabled); <u>Den Hartog</u>, 129 F.3d 1076 (addressing the issue of whether the association provision of the ADA protects a qualified employee from adverse employment action based on his disabled associate's misconduct, where the associate's misconduct does not impair the employee's job performance).

The Third Circuit recently addressed the same issue presented in this case in <u>Erdman v. Nationwide Ins. Co.</u>, No. 07-3796, 2009 WL 3018116, __ F.3d__ (3rd Cir. 2009). In <u>Erdman</u>, the plaintiff alleged that her employer's expressed reason for terminating her—that she used profanity while speaking with a customer and broke several other particular policies—was pretextual and that she was the victim of discrimination by association because she frequently requested special work hours (including full months off from work and modified work weeks) to care for her daughter who suffered from Down Syndrome. <u>Id.</u> at *1-2, 8. The Third Circuit affirmed the district court's grant of summary judgment in favor of the employer, <u>id.</u> at *9, citing much of the precedent referenced above, and reasoning that under the association provision, there is a distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative, <u>id.</u> at *8. In other words, there is a distinction between the actions of an employer motivated by "the known disability of an individual[,]" with whom an employee associates, 42 U.S.C. § 12112(b)(4), "as opposed to actions occasioned by the association." <u>Erdman</u>, 2009 WL 3018116, at *8, __ F.3d at __.

Therefore, the question in an association case such as this one is "whether [the plaintiff] has adduced sufficient evidence from which a reasonable jury could infer that [the defendant] terminated her because of her daughter['s] disability." Id. (emphasis omitted).

Applying that analysis to the instant case, the Court finds that the record is devoid of any evidence indicating that the plaintiff was fired because of her daughter's disability.  The plaintiff points only to her supervisor's alleged "lack of credibility" in determining that she had a history of abusing the defendant's policy for taking leave from work.  Pl.'s Opp'n at 18.  Even assuming that the defendant considered the plaintiff's "pattern of abuse" by "taking leave without advanced request" as a violation of the Courts' leave of absence policy, there is nothing in the record that demonstrates that the plaintiff's daughter's disability was the reason for her termination.  Pl.'s Opp'n, Ex. 10 (Erugo Dep.) at 127.  Moreover, the record shows that the defendant did not even perceive the plaintiff as being "distracted" because of the "issues with her daughter." Id. at 107.  Therefore, the Court finds that there is no evidence from which a reasonable jury could infer that the defendant terminated the plaintiff because of her daughter's disability. Erdman, 2009 WL 3018116, at *8, __ F.3d at __.

2.  The Plaintiff's Failure to Provide a Reasonable Accommodation Allegation

The defendant argues that contrary to the plaintiff's position, Am. Compl. ¶ 48, the plaintiff was provided a reasonable accommodation for the problem with her wrist, and therefore, she cannot establish a prima facie case for failure to provide her with a reasonable accommodation, Def.'s Mem. at 16.  The plaintiff responds, stating that the record contains "serious conflicting testimony as to whether the accommodations . . . were actually provided" and that the defendant "continued to assign her tasks that aggravated her injuries."  Pl.'s Opp'n at 18.

The ADA defines discrimination based on a disability to include "the failure to make reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability."  Haynes v. Williams, 392 F.3d 478, 481 (D.C. Cir. 2004) (citing 42 U.S.C. § 12102(2)(A)) (internal quotation marks omitted).  Under both the ADA and the Rehabilitation Act, in order to establish a prima facie case for failure to provide a reasonable accommodation, the plaintiff must show that: (1) she is disabled within the meaning of the Act, (2) her employer was aware of her disability, (3) with reasonable accommodation she could perform the essential functions of the position, and (4) she was denied a reasonable accommodation.  Jackson v. Wilkes Artis, 565 F. Supp. 2d 148, 151 (D.D.C. 2008); see Stewart v. St. Elizabeths Hosp., 593 F. Supp. 2d 111, 113 (D.D.C. 2009) (applying this test to a Rehabilitation Act claim).

In this case, the plaintiff fails to establish a prima facie case for two reasons.  First, as discussed at length above, the plaintiff is not disabled within the meaning of the ADA.  Second, even assuming that the plaintiff was disabled and viewing the record in the light most favorable to the plaintiff, the defendant did provide an accommodation for the one limitation about which it was aware: the plaintiff's tendonitis in her wrist.  As recommended in a written note from the plaintiff's physical therapist, Pl.'s Opp'n, Ex. 4. (Grievance Letter), the defendant provided her with "5 minutes of rest for every 15 minutes of work on the computer[,]" Def.'s Mem., Ex. D (Accommodation Letter).  Therefore, for both of the above reasons, the plaintiff's failure to provide a reasonable accommodation allegation cannot survive the defendant's motion for summary judgment.

### 3.  The Defendant's Proffered Reason for Terminating the Plaintiff

The defendant argues that under McDonnell Douglas, as applied to ADA and Rehabilitation Act claims, the plaintiff fails to establish a prima facie discrimination claim and, assuming that the plaintiff could establish a prima facie case, she offers no evidence that the proffered reason for her termination was pretextual.  Def.'s Mem. at 17-18.  The plaintiff responds that any explanation offered by her former supervisors is suspect because at the time the decision to terminate her was made she was never offered a chance to provide her own explanation concerning the threat she made to her coworker.  Pl.'s Opp'n at 19-22.

In the absence of direct evidence of discrimination prohibited by the ADA and the Rehabilitation Act, Courts employ the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas, 411 U.S. 792.  See DuBerry v. District of Columbia, 582 F. Supp. 2d 27, 34 (D.D.C. 2008).  This framework is nearly identical to the one employed when evaluating ADEA claims.  First, the plaintiff must make out a prima facie case of discrimination; second, the defendant must then in response produce a legitimate, non-discriminatory reason for its employment action; and third, in response to the defendant's explanation, the plaintiff must show that the reason proffered by the defendant is a pretext for discrimination.  Id.

As already noted, the District of Columbia Circuit recently clarified in an ADA discrimination case that "the prima-facie-case aspect of McDonnell Douglas is irrelevant when an employer has asserted a legitimate, non-discriminatory reason for its decision—as an employer almost always will do by the summary judgment stage of an employment discrimination suit." Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008); DuBerry, 582 F. Supp. 2d at 34.  Thus, the Court need not decide whether the plaintiff has established a prima facie case because the defendant has proffered a non-discriminatory reason

for her termination: her acceptance of criminal responsibility for threatening a coworker.[17]   The

only issue for the Court then is "whether the plaintiff produced sufficient evidence for a

reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual

reason and that the employer intentionally discriminated against the plaintiff on a prohibited

basis." DuBerry, 582 F. Supp. 2d at 34 (quoting Adeyemi, 525 F.3d 1222 (2008)) (internal

quotation marks omitted).  The plaintiff has failed to produce evidence to meet this burden.

The defendant states that plaintiff was "terminated due to her threatening a co-worker

which led to her arrest and entry of a restraining order."  Def.'s Mem. at 18.  The record includes

a letter from June 30, 2005, recommending the plaintiff's termination after the arrest and

restraining order were issued and a letter from July 25, 2005, just after the plaintiff accepted

criminal responsibility for her conduct, advising the plaintiff of her termination.  Def.'s Mem.,

Ex. C (Recommendation of Termination Letter).  Moreover, the depositions of Mr. Erugo and

Mr. Friend, submitted in support of the plaintiff's opposition to the summary judgment, contain

further elaborations of this explanation.  Pl.'s Opp'n, Ex. 9 (Friend Dep.) at 121 ("[W]e have a

zero tolerance [policy] on violence and threats in the office"); id. at 154 ("I have been fairly

consistent with threats of violence . . . and again from looking at everything in totality, the police

report, the stay away order, and everything considered, my recommendation I felt was

appropriate."); id., Ex. 10 (Erugo Dep.) at 208-10.  Taken as true, as the Court must do because

they were submitted by the plaintiff, these statements actually support the defendant's position

---

[17] While it is not necessary for the Court to determine whether the plaintiff established a prima facie case of
discrimination under the ADA, the Court would find that plaintiff has failed to meet this burden because she is
unable to show that she was disabled as defined by the ADA.  See Stewart v. St. Elizabeths Hosp., 593 F. Supp. 2d
111, 113 (D.D.C. 2009) (holding that to establish prima facie case of discrimination under either the ADA or
Rehabilitation Act, the employee must show that she was an individual who had a disability within meaning of
statute).  However, as discussed above in the ADEA section of this opinion, whether a prima facie case has been
established is relevant in evaluating whether the defendant's non-discriminatory reasoning for terminating the
plaintiff was a pretext.  Aka, 156 F.3d at 1289.

that its legitimate, non-discriminatory reason for terminating the plaintiff's employment was not pretextual.

Nonetheless, the plaintiff contends that a reasonable jury could find that the defendant's proffered reason for her termination is pretextual because her former supervisors are not credible. Pl.'s Opp'n at 19-22.  Specifically, the plaintiff argues that neither Mr. Erugo nor Mr. Friend can be trusted because neither of them called or contacted her to discuss her arrest and instead, relied on allegations made by the coworker that the plaintiff had committed the threat.  Id.  Despite these attacks on her former supervisors' credibility, they do not raise a genuine factual dispute as to whether the plaintiff was terminated for the reason expressed by the defendant.  See Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) ("At this point, to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason."); Duberry, 582 F. Supp. 2d at 36 ("'All of the evidence' includes evidence of the plaintiff's prima facie case and evidence showing the employer's proffered reasons to be false.") (internal citation and quotation marks omitted).

As discussed above and throughout this memorandum opinion, the record demonstrates that the plaintiff was terminated only after she accepted criminal responsibility for threatening a coworker.  The plaintiff's argument that her superiors "took Ms. Galloway's allegations and immediately endorsed [the] proposal to terminate [the plaintiff]" is not only irrelevant to whether the defendant discriminated against the plaintiff because of her disability, but it is also unsupported by the record.  Pl.'s Opp'n at 20.  While the recommendation to terminate the plaintiff was made 5 days before the plaintiff executed her First Time Offender Diversion Agreement, the plaintiff's supervisor notes that he "read and carefully considered . . . responses

from her lawyer" and specifically references the restraining order issued against the plaintiff.
Pl.'s Opp'n., Ex. 7 (Recommendation for Termination).  Moreover, the defendant did not
actually act on the recommendation until nearly 10 days after the plaintiff executed her First
Time Offender Diversion Agreement and formally accepted criminal responsibility for
threatening bodily harm to her coworker.  Def.'s Mem., Ex. C (Notice of Termination).  Thus,
even when viewing the record in the light most favorable to the plaintiff, the Court is compelled
to find that she has failed to demonstrate that a reasonable jury could find the defendant's reason
for terminating her employment was actually a pretext for discrimination based on the plaintiff's
alleged disabilities.

C.  The Plaintiff's Common Law Claim for Wrongful Discharge

   The plaintiff contends that the defendant wrongfully terminated her employment in
violation of the Courts' Comprehensive Personnel Policies ("Courts' Personnel Policies"), §§
110 and 1100.  Am. Compl. ¶¶ 50-51.  In support of its motion for summary judgment, the
defendant argues that the plaintiff does not have an actionable claim for wrongful discharge
because she was an at-will employee who was terminated for a specific reason.  Def.'s Mem. at
18-20.  The plaintiff responds that she falls under an exception to the "at-will doctrine."  Pl.'s
Opp'n at 22-23.  In addition to reaffirming its argument in support of its motion for summary
judgment on this claim, the defendant argues that the Court does not have jurisdiction to consider
this claim because the plaintiff failed to exhaust her administrative remedies as provided under
the District of Columbia Comprehensive Merit Personnel Act (D.C. Personnel Act), D.C. Code
§§ 1-601.01- 1-607.08.  Def.'s Reply at 7-8.

1. The Defendant's Failure to Exhaust Administrative Remedies Challenge

The defendant argues in its reply that the plaintiff "has failed to exhaust the necessary administrative remedies prior to initiating a claim in this Court."  Def.'s Reply at 7.  Specifically, the defendant contends that the "plaintiff's . . . employment was governed by the [D.C. Personnel Act]" and therefore, she must first seek relief from the District of Columbia's Office of Employee Appeals ("D.C. Appeals Office") before challenging an adverse employment action against the District of Columbia in court.[18]  Id.  The defendant's exhaustion challenge under the D.C. Personnel Act fails because "the [D.C. Personnel Act], which is the counterpart to the [Courts' Personnel Policies] in terms of establishing personnel policies for virtually all other employees of the District of Columbia government, designedly does not apply to employees of the D.C. Courts."  Martin v. D.C. Courts, 753 A.2d 987, 993 (D.C. 2000); see D.C. Code § 1-602.1(a) ("[The D.C. Personnel Act] shall apply to all employees of the District of Columbia Government, except the Chief Judges and Associate Judges of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals and the nonjudicial personnel of said Courts.").  Therefore, the Court must decide the merits of the plaintiff's wrongful discharge claim.

2.  Sustainability of the Plaintiff's Wrongful Discharge Claim

The defendant argues that because the plaintiff did not have an employment contract with the defendant and because she was terminated for admitting criminal responsibility for

---

[18] While a party is generally not permitted to raise an argument for the first time in its reply filing, because this argument arguably impacts whether the Court has jurisdiction to decide this claim, the Court is obliged to consider it.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (stating that federal courts are obliged to consider challenges to their jurisdiction, even sua sponte, when "doubt arises") (citations omitted).  While the District of Columbia Circuit has reserved judgment as to whether federal courts must treat the exhaustion requirements of the D.C. Personnel Act as jurisdictional, Johnson v. District of Columbia, 552 F.3d 806, 809, n.2 (D.C. Cir. 2008), the requirement is considered jurisdictional by the District of Columbia Court of Appeals, King v. Kidd, 640 A.2d 656, 663 (D.C. 1993).  See Payne v. District of Columbia, 592 F. Supp. 2d 29 (D.D.C. 2008) (treating the exhaustion requirement as jurisdictional).

threatening a coworker, the plaintiff cannot maintain a claim for wrongful discharge.  Def.'s

Mem. at 19-20.  The plaintiff responds that she was not an at-will employee and that the Courts'

Personnel Policies was violated by her grievances not being addressed in the same manner

provided to other employees, namely Ms. Galloway.  Pl.'s Opp'n at 22-23.   Specifically, the

plaintiff argues that she was not an at-will employee because "[Courts' Personnel Policies] . . .

claerly [(sic.)] states that 'all nonjudicial personnel employed by the District of Columbia Courts,

unless specifically appointed as excepted service employees are considered career service

employpyees [(sic.)]."  Pl.'s Opp'n at 22 (<u>citing</u> Pl.'s Opp'n, Ex. 15 (Courts Personnel Policies)

at 120-1).  The defendant replies that "the [Courts' Personnel Policies are] not a contract" and

the plaintiff is therefore an at-will employee.  Def.'s Reply at 7.

       Regardless of whether the plaintiff was an at-will employee or whether the Courts'

Personnel Policies create a contractual relationship between the parties, the result is the same,

and therefore, the Court does not need to decide the status of her prior employment with the

Courts.[19]

       Assuming that the plaintiff was an at-will employee, she was subject to having her

employment terminated at any time and for any reason, or for no reason at all.  <u>See</u> <u>Kerrigan v.</u>

---

[19] Based on the record, the Court would be more inclined to find that she was an at-will employee because the only evidence to the contrary is the one line in the Courts' Personnel Policies stating that "[a]ll nonjudicial personnel employed by [the Courts], unless specifically appointed as excepted service employees, are considered career service employees."  Pl.'s Opp'n, Ex. 15 (Courts Personnel Policies) at 120-1.  While the plaintiff has provided the Court only a portion of the Courts' Personnel Policies, it is possible that her position is included as one of the positions "specifically appointed as excepted" to the Career Service Employee title.  <u>Id</u>.  However, without actual proof that this is the case, taken alone, these several passages from the Courts' Personnel Policies do not seem to create a contractual relationship.  <u>See</u> <u>Dunaway v. Int'l Bhd. Of Teamsters</u>, 310 F.3d 758, 766 (D.C. Cir. 2002) ("In the District of Columbia, employment contracts for no definite period of time are terminable at will of either party absent clear evidence of the parties' intent to contract otherwise."); <u>Willoughby v. Potomac Elec. Power Co.</u>, 100 F.3d 999, 1001 (D.C. Cir. 1996) ("In the District of Columbia . . . the employment relationship is presumed to be terminable at will by either employer or employee."); <u>Carter v. George Washington Univ.</u>, 180 F. Supp. 2d 97, 109 (D.D.C. 2001) ("In the District of Columbia, if there is no express contract or clause indicating the duration of the employment relationship then there is a presumption of at-will employment.").  However, as indicated, this issue need not be decided.

Britches of Georgetowne, Inc., 705 A.2d 624, 627 (D.C. 1997) ("[A]n employer may discharge and, impliedly, demote, an at-will employee at any time and for any reason, or for no reason at all." (internal citations and quotation marks omitted)).  The District of Columbia recognizes one narrow "public policy" exception to this general rule that has been extended to only a few factual circumstances, none which apply to the plaintiff's situation.  See Freas v. Archer Servs., Inc., 716 A.2d 998 (D.C. 1998) (extending the exception to an at-will employee terminated for reporting an employer's illegal conduct to the authorities); Washington v. Guest Servs., 718 A.2d 1071, 1072 (D.C. 1998) (extending the exception to an at-will employee who was terminated for reporting potentially illegal activity to his superiors); Carl v. Children's Hosp., 702 A.2d 159 (D.C. 1997) (extending the exception to an at-will employee who was terminated for exercising her statutory right to testify before the District of Columbia Council); Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991) (establishing the public policy exception and allowing an at-will employee to sue her employer for wrongful discharge based on the employee's refusal to break the law at the employer's direction); see also Turner v. Fed. Express Corp., 539 F. Supp. 2d 404, 411 (D.D.C. 2008) (recognizing the exception for an at-will employee's refusal to break the law).

The plaintiff contends that the Courts' Personnel Policies "has an explicit public policy purpose, claerly [(sic.)] tied to fundamental and long held Constitutional principles and statutory dictates[,]" because it states that its purpose is to "ensure the fair treatment of employees in all aspects of employment[,]" and therefore, "it falls into the public [p]olicy acception [(sic.)] to the at-will doctrine."  Pl.'s Opp'n at 23.  The plaintiff's argument misconstrues the public policy exception altogether.  As the cases above clearly demonstrate, the public policy exception applies to a narrow set of circumstances that includes situations where an employee suffers an

adverse action for refusing to break the law or for following the law to the detriment of her employer.  In fact, the plaintiff's opposition memorandum includes a long quotation from the District of Columbia Court of Appeals that clearly explains this exception: "The employer is bound, at a minimum, to know the fundamental public policies of the state and nation <u>as expressed in their constitutions and statutes.</u>"  Pl.'s Opp'n at 23 (<u>quoting</u> <u>Carl</u>, 702 A.2d at 164 (<u>quoting</u> <u>Gantt v. Sentry Ins.</u>, 824 P.2d 680, 687-88 (Cal. 1992)) (emphasis added)).  The plaintiff does not point to any fundamental public policy expressed in the constitution or the statutes of the District of Columbia that support her position, but rather points to the general policy of the Courts' Comprehensive Policies, which are merely "regulations approved by the Joint Committee [of the District of Columbia Courts.]"  <u>Martin</u>, 753 A.2d at 992 (quotation marks omitted).  Accordingly, because the plaintiff does not fall under the public policy exception, her wrongful discharge claim fails if she is an at-will employee.

On the other hand, assuming for the sake of argument that the Courts' Personnel Policies created a contractual relationship between the plaintiff and the defendant, her wrongful discharge claim would nonetheless also fail.  The Courts' Personnel Policies provides three categories of employee behavior that warrant corrective action.  Pl.'s Opp'n, Ex. 15 (Courts' Personnel Policies) § 1001 at 1000-1.  Misconduct, one of those categories, is defined as "behaviors that are violations of court rules and policies and/or illegal." <u>Id.</u>  Level II Misconduct, entitled "Illegal Behavior/Serious Misconduct[,]" includes "conviction of a criminal offense, employee criminal conduct and conduct posing a risk to persons . . . ." <u>Id</u>. at 1000-2-1000-3.  Among the "corrective actions . . . that can be utilized by a superior" when an employee has demonstrated Level II Misconduct is the "recommendation of termination." <u>Id.</u> § 1002 at 1000-4.

The plaintiff argues that the policy concerning misconduct was violated because her employment was terminated "for conduct that occurred outside the Court's premis[es], and for which [she] was not convicted."[20]  Pl.'s Opp'n at 23.  As discussed throughout this Memorandum Opinion and as the record clearly demonstrates, the plaintiff's employment was terminated for her admitting criminal responsibility for threatening a coworker, which violated the Courts' policy against engaging in "Level II Misconduct," for which a "recommendation of termination" is proper, not only when an employee is actually convicted of a crime, but also when the employee engages in "criminal conduct and conduct posing a risk to persons[.]"  Pl.'s Opp'n, Ex. 15 (Courts' Personnel Policies) § 1001 at 1000-3.  Therefore, even if the plaintiff was not an at-will employee, the Court would nonetheless have to grant the defendant's motion for summary as to her wrongful discharge claim.[21]

---

[20] While it might be possible that there existed a claim for judicial review by the Superior Court of the District of Columbia of the Courts adherence to their own adopted personnel policies, that was not a claim raised by the plaintiff in this case.  Martin, 753 A.2d at 994 (holding that Congress did not intend to foreclose judicial review of a claim that the District of Columbia Courts violated their own personnel procedures).

[21] The quality of drafting of the plaintiff's opposition documents is not what this Court expects from lawyers who practice in this Court.  For example, as discussed above, see supra note 14, what the Court assumes was a missing word in the plaintiff's memorandum in support of her opposition could have been interpreted as a concession that the plaintiff is not alleging that she has a disability.  Pl.'s Opp'n at 16 (the sentence stating that "she not claim that she is actually a disabled person" could be interpreted as meaning that the plaintiff no longer alleges that she was disabled under the ADA, but only that she was perceived as being disabled and as a result, many of her other arguments and much of the record would become irrelevant).  In addition, this same document is littered with typographical errors and inconsistent citations, and at times lacks rational organization.  While a list of examples would be too voluminous for this footnote, the 10 typographical errors in the final paragraph of the opposition memorandum, including the misspelling of the plaintiff's name, Pl.'s Opp'n at 23, alone illustrate the lack of care and attention counsel invested to the preparation of the plaintiff's opposition.

## IV. CONCLUSION

For the forgoing reasons, this Court **GRANTS** the defendant's motion for summary

judgment in its entirety.[22]


_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[22] The Court issued an Order consistent with this Memorandum Opinion on September 25, 2009.  That Order is now final upon the issuance of this Memorandum Opinion.